1  Vanessa R. Waldref
2  United States Attorney
   Eastern District of Washington
3  John T. Drake
4  Molly M.S. Smith
   Assistant United States Attorneys
5  Post Office Box 1494
6  Spokane, WA 99210-1494
   Telephone: (509) 353-2767
7

8

9           UNITED STATES DISTRICT COURT
       FOR THE EASTERN DISTRICT OF WASHINGTON
10

11 DAVID G. DONOVAN,                      No. 4:21-CV-05148-TOR
   CHRISTOPHER J. HALL, STEPHEN C.
12 PERSONS, THOMAS R. ARDAMICA,
   *et al.*,                             **FEDERAL DEFENDANTS'**
13                                        **MOTION TO DISMISS AMENDED**
                                          **COMPLAINT**
14                        Plaintiffs,
                                          03/25/2022
15              v.                        Without Oral Argument

16 JOSEPH R. BIDEN, in his official
   capacity as President of the United States
17 of America, JENNIFER
   GRANHOLM, in her official capacity as
18 Secretary of the UNITED STATES
   DEPARTMENT OF ENERGY, BRIAN
19 VANCE in his official capacity as
   Manager of the UNITED STATES
20 DEPARTMENT OF ENERGY Hanford
   Site, VALERIE MCCAIN, in her official
21 capacity as Vit Plant Project Director,
   BECHTEL, SCOTT SAX in his official
22 capacity as President and Project
   Manager of CENTRAL PLATEAU
23 CLEANUP COMPANY, ROBERT
   WILKINSON in his official capacity as
24 President and Program Manager of
25 HANFORD MISSION INTEGRATED
   SOLUTIONS, LLC., DON HARDY in
26 his official capacity as Manager of
   HANFORD LABORATORIES
27 MANAGEMENT AND INTEGRATION
28

1
2
3
4
5
6
7

222-S LABORATORY MANAGER,
HIRAM SETH WHITMER in his official
capacity as President and Program
Manager, HPM CORPORATION,
STEVEN ASHBY in his official capacity
as Laboratory Director, PACIFIC
NORTHWEST NATIONAL
LABORATORY, JOHN ESCHENBERG
in his official capacity as President and
Chief Executive Officer of
WASHINGTON RIVER PROTECTION
SOLUTIONS,

8

                              Defendants.

9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF CONTENTS

**I.    Introduction and Procedural History** ................................................................1

**II.   Motion to Dismiss Standard**.........................................................................3

**III.  Argument** ......................................................................................4

A. Plaintiffs still fail to state any claim against Brian Vance. ...........................4

B. The overwhelming majority of Plaintiffs lack standing to sue. .....................5

    *i. Plaintiffs who have not applied for any exception face self-inflicted injuries that cannot support standing.* ...........................................6

    *ii. Plaintiffs who have already been vaccinated or who have been provided accommodations do not face an injury that gives them standing.*................8

    *iii. Plaintiffs who have not alleged their exception status have not met their burden of establishing jurisdiction.* ...........................................9

    *iv. Plaintiffs who have not yet had their accommodation requests determined raise unripe claims*................................................10

C. Federal Defendants are not subject to ADA employment discrimination liability (Count 3) as a matter of law. ...........................................12

D. Plaintiffs' wrongful termination claim (Count 4) remains premature and barred by sovereign immunity. ..................................................13

E. Plaintiffs' state law claims (Counts 5 and 6) remain insufficiently pled and barred by sovereign immunity. ..................................................14

F. Plaintiffs do not state a viable cause of action for violation of the Procurement Act and their arguments fail on the merits (Count 8) ..............15

G. The President is statutorily not subject to the Office of Federal Procurement Policy Act (Count 9). ..................................................23

H. Plaintiffs' constitutional structural arguments (Counts 10–13, 17) are not standalone causes of action and are insufficiently pled................................23

I.  Plaintiffs' APA claims (Counts 14–16) fail for lack of a proper defendant. .25

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

J.  Plaintiffs fail to adequately plead their equal protection challenge (Count 2)...
....................................................................................................................25

K.  The vaccination mandates do not violate Plaintiffs' substantive due process
rights (Count 7). .............................................................................................26

L.  Plaintiffs' free exercise claim is unripe and insufficiently pled (Count 1). ...27

M. Plaintiffs' Section 1983 claim (Count 18) cannot stand as an independent
cause of action and cannot be asserted against Federal Defendants. .............28

**IV.   Conclusion...........................................................................................................29**

FEDERAL DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT - iv

Defendants Joseph R. Biden, Jennifer Granholm, and Brian Vance, through counsel, respectfully move to dismiss Plaintiffs' Amended Complaint (ECF No. 60) pursuant to Fed. R. Civ. P. 12(b)(1) and (6) and to dismiss Federal Defendants as parties to this suit.

## I.    Introduction and Procedural History

The ongoing COVID-19 pandemic poses a serious threat to public health and the economy.  The illness and mortality caused by COVID-19 have led to serious disruptions for organizations, employees, and contractors across the United States, and the federal government is no exception.  Accordingly, on September 9, 2021, the President issued two Executive Orders aimed at preventing disruptions in the provision of government services by federal employees and contractors by combatting the spread of COVID-19.  *See* Requiring Coronavirus Disease 2019 Vaccination for Federal Employees, Exec. Order No. 14043, 86 Fed. Reg. 50,989, (Sept. 9, 2021) ("Employee Order"); Ensuring Adequate COVID Safety Protocols for Federal Contractors, Exec. Order No. 14,042, 86 Fed. Reg. 50,985 (Sept. 9, 2021) ("Contractor Order").

Plaintiffs, a group of federal employees and federal contractor employees associated with the Department of Energy ("DOE") Hanford Site, filed an initial Complaint seeking to challenge these vaccination mandates.  ECF No. 1.  Plaintiffs sought preliminary injunctive relief, which the Court denied.  ECF No. 58.  Federal

Defendants then moved to dismiss the initial Complaint.  ECF No. 59.  Plaintiffs then filed their Amended Complaint as a matter of course.  ECF No. 60.

The Amended Complaint differs from the initial Complaint in that it corrects the case caption, adds one Federal Defendant and twenty-two Plaintiffs, and offers an updated discussion of what accommodations have been provided to which Plaintiffs. But the underlying procedural and jurisdictional flaws remain the same.  The now-314 Plaintiffs apparently seek class action results from claims that require individualized evaluation, and they fail to sufficiently plead facts to support those individualized claims.  And while Plaintiffs wish to assert certain arguments about the legality of the Executive Orders, that does not exempt them from constitutional standing requirements or the Federal Rules of Civil Procedure.  Particularly in a case of this size, Plaintiffs' failures to meet basic pleading standards are fatal.  Even accepting Plaintiffs' current factual allegations as true, Plaintiffs' claims against Federal Defendants should be dismissed, as all causes of action asserted against Federal Defendants are either nonjusticiable or fail to state a claim.[1]

---

[1] Federal Defendants also move the Court to strike Plaintiffs' jury demand, as Plaintiffs identify no relevant waiver of sovereign immunity that entitles them to a jury trial.  Fed. R. Civ. P. 39(a)(2).

FEDERAL DEFENDANTS' MOTION TO DISMISS - 2

## II.    Motion to Dismiss Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) is addressed to the court's subject matter jurisdiction.  Questions of justiciability are "inherently jurisdictional."  *Corrie v. Caterpillar, Inc.*, 503 F.3d 974, 981 (9th Cir. 2007).  A court may not hear claims over which it lacks subject-matter jurisdiction. Fed. R. Civ. P. 12(h)(3).  A Rule 12(b)(1) motion may be classified as either facial, in which case the court's inquiry is limited to the allegations in the complaint, or factual, in which case the court may consider extrinsic evidence. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  "In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Id.*  The party asserting jurisdiction bears the burden of proof on the issue. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is addressed to the sufficiency of the pleading of claims in the complaint.  Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  To proceed past the pleading stage, the plaintiff's factual allegations, accepted as true, must state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*

*v. Iqbal*, 556 U.S. 662, 678 (2009).  While detailed factual recitations are not required, the plaintiff must come forward with more than "unadorned, the-defendant-unlawfully-harmed-me" allegations.  *Id.*  Formulaic recitations of the elements of a claim, supported by mere labels and conclusions, are not sufficient.  *Twombly*, 550 U.S. at 555.

## III.   Argument

A.  Plaintiffs still fail to state any claim against Brian Vance.

As the Court correctly ruled at the TRO stage, Plaintiffs did not state a claim for relief against Defendant Vance in their initial Complaint.  ECF No. 58 at 4.  Plaintiffs' Amended Complaint still fails to state any claim against Defendant Vance.  The Amended Complaint makes a more elaborate statement of identification in naming Brian Vance as the manager of the Hanford Site.  ECF No. 60 at ¶ 18.  But Plaintiffs still have not alleged any facts to indicate how Defendant Vance is plausibly liable for any of the specific causes of action asserted, beyond the conclusory allegation that Vance "has directed Hanford sitewide enforcement and implementation" of the two challenged Executive Orders.  In failing to make any other factual allegation regarding Defendant Vance, Plaintiffs fail to offer more than insufficient "unadorned, the-defendant-unlawfully-harmed-me" allegations.  *Iqbal*, 556 U.S. at 678.  The Court should dismiss all claims asserted against Defendant Vance.

FEDERAL DEFENDANTS' MOTION TO DISMISS - 4

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

B.  <u>The overwhelming majority of Plaintiffs lack standing to sue.</u>

Federal Defendants previously submitted detailed briefing challenging every Plaintiff's standing to sue in this case.  ECF No. 59 at 4–11.  The Amended Complaint now alleges sufficient facts to indicate, accepting those allegations as true, that five Plaintiffs have suffered an actual and concrete injury, not of their own making, that supports their standing to sue.  ECF No. 60 at ¶¶ 77, 79, 142, 183, 263.  However, the remaining 309 Plaintiffs continue to lack standing, and the Court lacks jurisdiction over their claims.  Although the Amended Complaint now makes different specific factual allegations regarding the individual Plaintiffs' circumstances, these Plaintiffs' claims still largely fall into the same categories of being unripe, lacking injury, facing self-inflicted injuries, or insufficiently pleading their claims.

Article III courts are courts of limited jurisdiction, and questions of justiciability are "inherently jurisdictional."  *See Corrie*, 503 F.3d at 981.  Challenges to standing are properly asserted in a Rule 12(b)(1) motion.  *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010).  The "irreducible constitutional minimum of standing" requires that the plaintiff suffer an "injury in fact" that is "concrete and particularized" and "actual or imminent," that there is a "causal connection between the injury and the conduct complained of," and that it is "likely" that the injury is redressable by a favorable decision.  *Lujan*, 504 U.S. at 560–61 (citations omitted).

Plaintiffs' alleged injuries in this case are based on their supposed forced choice between receiving an unwanted vaccine or jeopardizing their continued employment. They explicitly identify their "imminent and wrongful termination" as the harm they face. ECF No. 60 at ¶ 9. But as in the initial Complaint, the vast majority of Plaintiffs do not presently face this injury, and if they do, that injury is self-inflicted. Accepting as true at this stage of the proceedings that Plaintiffs have good-faith medical or religious objections to vaccination, Plaintiffs are able to pursue an exception and accommodations from the vaccine mandates. Based on the allegations now raised in the Amended Complaint, Plaintiffs have generally pursued that option as follows: (1) some have not applied for an exception to the vaccination requirement; (2) some are already vaccinated or have been granted an accommodation; (3) some have not alleged the status of any request for an exception; and (4) some have sought an exception but have not yet had accommodations determined. For slightly different reasons, each of these plaintiff categories lack standing to pursue their claims.

>    i. *Plaintiffs who have not applied for any exception face self-inflicted*
>       *injuries that cannot support standing.*

Three Plaintiffs in this case affirmatively pled that they have not applied for an exception to their employers' implementation of the vaccine mandates. ECF No. 60 at ¶¶ 58, 185, 235. One other Plaintiff alleges he moved out of state before his accommodation request was determined, and he has since been terminated because he

cannot telework from out of state.  ECF No. 60 at ¶ 50.  These Plaintiffs lack standing because their injuries are self-imposed.

In order to meet the causation requirement of the standing test, a plaintiff's injury must be "fairly traceable to the challenged action."  *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010).  Plaintiffs "cannot manufacture standing merely by inflicting harm on themselves," as such harms are not fairly traceable to the defendant's conduct.  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013).  The Executive Orders challenged here implement vaccination requirements, but they allow for exceptions as required by law.  Plaintiffs who have good-faith medical or religious objections to vaccination have the ability to seek exceptions from the requirement by seeking accommodations from their employers.  But the three Plaintiffs who have declined to pursue exceptions, and the one who disqualified himself from employment before completing that process, do not face potential termination because the vaccine mandates unduly burden their legal rights; rather, they are facing potential termination, or actual termination, because they declined to fully pursue the exception and accommodation process available to them.  That injury is not traceable to Federal Defendants.  Because these Plaintiffs' claimed injuries are self-inflicted, they are insufficient to support standing to sue Federal Defendants, and these Plaintiffs should be dismissed from this case.

*ii. Plaintiffs who have already been vaccinated or who have been provided accommodations do not face an injury that gives them standing.*

The Plaintiffs in this case who are already vaccinated, and those who have received accommodations from their employers, do not have standing in this case because they are fully compliant with the vaccination mandates and do not face the injuries alleged in the Amended Complaint.

The "injury in fact" component of standing "requires that the party seeking review be himself among the injured." *Lujan*, 504 U.S. at 563 (citation omitted).  Of the now-314 Plaintiffs in this case, 65 have alleged that they have been granted some form of accommodation by their employer.  ECF No. 60 at ¶¶ 34–36, 44, 47, 51, 53, 57, 61, 62, 64, 71, 75, 81, 85, 90, 92, 100, 103, 106, 127, 129, 134, 138, 139, 146, 152, 155, 158, 172–74, 182, 188, 196, 198, 206, 214–18, 231, 234, 2326, 239, 241, 251, 276, 280, 281, 284, 300, 312–16, 322–24, 334.  Three other Plaintiffs have alleged that they are already fully vaccinated, and are therefore compliant with the vaccination mandate.  ECF No. 60 at ¶¶ 82, 116, 184.  Together, these 68 Plaintiffs do not face termination from their employment based on the challenged vaccination mandates because they are fully compliant with the vaccination requirement, either by becoming fully vaccinated or by obtaining a legal exception from the policy.  These Plaintiffs therefore do not face the injury they allege to support their standing to sue in this case, and their claims should be dismissed.

### iii. *Plaintiffs who have not alleged their exception status have not met their burden of establishing jurisdiction.*

Some Plaintiffs have not alleged any information about whether they have sought exception requests, and therefore have not sufficiently pled information to establish that they have standing to sue. "The party invoking federal jurisdiction bears the burden of establishing standing." *Clapper*, 568 U.S. at 411–12 (citation and quotation marks omitted). Since standing is "an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561.

Nineteen Plaintiffs here have alleged their job titles, but have alleged no information about their vaccination status, the nature of their objection, or whether they have pursued an exception from the vaccination requirement. ECF No. 60 at ¶¶ 45, 195, 111–13, 121, 132, 146–47, 161, 203, 221, 225, 232–33, 238, 287, 290, 317, 326, 333. Three others have alleged that they are partially vaccinated, but do not indicate whether they have pursued an exception from the remainder of the vaccination requirement. ECF No. 60 at ¶¶ 126, 142, 266. These allegations are insufficient to meet Plaintiffs' burden of establishing they have standing. If any of these Plaintiffs who have good-faith religious or medical objections did not apply for an exception from the vaccination requirement, they fall into the first category of plaintiffs whose injuries are self-inflicted and not traceable to the challenged

Executive Orders.  If any of these Plaintiffs are granted accommodations, they will be compliant with the vaccination requirement and will fall into the second category of plaintiffs who do not face any imminent injury in fact.  Without alleging more information, it is impossible to tell whether these Plaintiffs have standing.[2]  They therefore fail to meet their burden of establishing standing at this stage in the proceedings, and their claims should be dismissed.

iv.  *Plaintiffs who have not yet had their accommodation requests determined raise unripe claims.*

The remainder of the individually named Plaintiffs allege that they have not yet been granted accommodations, generally following the pattern pleading that the Plaintiff has "submitted a religious and/or medical exemption, "accepted by" the employer, "but has been provided no accommodation" or "was originally not provided an accommodation."  The Court should dismiss these claims as unripe.

The ripeness doctrine guards against "premature adjudication" of abstract disagreements and theoretical harms.  *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538

---

[2] Broadening a flaw from the initial Complaint, eight Plaintiffs now fail to identify their employers, so it is impossible to determine from the pleadings whether these Plaintiffs are even subject to either Executive Order.  ECF No. 60 at ¶¶ 40, 84, 92, 158, 171, 270, 317, 326.  Additionally, several Plaintiffs appear to be suing employers that are not named as defendants in this matter.  *See* ECF No. 60 at ¶¶ 48, 236, 241.  These Plaintiffs similarly fail to meet their burden to show standing.

U.S. 803, 807–08 (2003) (citation omitted).  Ripeness contains both a constitutional and a prudential component.  *Coons v. Lew*, 762 F.3d 891, 897 (9th Cir. 2014).  The constitutional component derives from Article III, which limits the jurisdiction of federal courts to deciding actual cases or controversies.  *Id.*  A case is not "constitutionally" ripe when the plaintiff's entitlement to relief depends on "contingent future events that may not occur as anticipated, or indeed may not occur at all."  *Trump v. New York*, 141 S. Ct. 530, 535 (2020) (per curiam) (citation omitted).  The prudential component of the ripeness inquiry focuses on whether the issues in the case are "fit for review" on the record presented.  *Nat'l Park Hosp. Ass'n*, 538 U.S. at 812.  The key consideration is whether "further factual development would significantly advance [the Court's] ability to deal with the legal issues presented."  *Id.* (quotation and citation omitted); *see also In re Coleman*, 560 F.3d 1000, 1009 (9th Cir. 2009) (prudential considerations allow courts to "delay consideration of the issue until the pertinent facts have been well-developed in cases where further factual development would aid the court's consideration").

As the Court previously recognized at the TRO stage, Plaintiffs' misleading pleading language reveals that their claims are unripe.  ECF No. 58 at 12–14. Plaintiffs still do not allege that their requested accommodations have been denied, and therefore they do not face their alleged "imminent and wrongful termination" from employment with DOE or a Hanford contractor.  ECF No. 60 at ¶ 9.  Although Plaintiffs' word choice has changed from the initial Complaint to the Amended

1    Complaint, the jurisdictional flaws remain the same:  allegations that a Plaintiff "was

2    not provided an accommodation" or "was not originally provided an accommodation"

3    are still not allegations that the Plaintiff was actually denied an accommodation.[3]  As

4    both a constitutional and prudential matter, Plaintiffs have failed to allege claims that

5    are ripe for review.  The Court should dismiss these claims for lack of standing.

6

7            C.  Federal Defendants are not subject to ADA employment discrimination
                 liability (Count 3) as a matter of law.

8        Plaintiffs' third cause of action asserts a claim for failure to provide reasonable

9    accommodations as required by the ADA.  ECF No. 60 at ¶¶ 378–89.  Again, absent

10   sufficient pleading of this legal theory as asserted by "[s]ome Plaintiffs," Federal

11   Defendants are left to assume that this claim is being asserted against them in some

12   capacity.  *Id.* at ¶ 379.

13       If Plaintiffs' claim is construed as a facial challenge to the two Executive

14   Orders, this claim fails because both Executive Orders provide for vaccination

15   exceptions as required by law.  86 Fed. Reg. 50,989; 86 Fed. Reg. 50,985.  And if

16   Plaintiffs' claim is construed as an as-applied challenge brought against Federal

17   _____

18   [3] In fact, the allegation that certain Plaintiffs were not "originally" accommodated can

19   alternatively be read to mean that the accommodation is either still pending or has

20   already been granted.  If these Plaintiffs have actually been granted accommodations,

21   then they fall into the category of Plaintiffs who do not face an injury supporting

22   standing.

1
2
3
4
5
6

Defendants by the Federal Employee Plaintiffs, they still fail to state a claim, as the

ADA does not apply to the federal government as an employer. *Zimmerman v. Or.*

*Dep't of Justice*, 170 F.3d 1169, 1172 (9th Cir. 1999). Even if Plaintiffs had

sufficiently pled facts in support of this claim, it would still fail as a matter of law.

The Court should dismiss this claim against Federal Defendants.

7
8

     D.  <u>Plaintiffs' wrongful termination claim (Count 4) remains premature and barred by sovereign immunity.</u>

9
10
11
12
13
14
15

Count 4 of the Amended Complaint asserts a claim for wrongful termination in

violation of Title VII of the Civil Rights Act and the Washington Law Against

Discrimination ("WLAD"). ECF No. 60 at ¶¶ 390–93. Federal Defendants are again

left to assume this count is asserted against them by the eight Federal Employee

Plaintiffs. The Court should dismiss this claim for several reasons.

16
17
18
19
20

First, and fatally, the Complaint does not allege that any of the Federal

Employee Plaintiffs have been terminated. Plaintiffs cannot state a facially plausible

claim for wrongful termination of any kind if they have not yet been terminated. *See*

*Twombly*, 550 U.S. at 570.

21
22
23
24
25
26

Second, to the extent Federal Employee Plaintiffs assert a Title VII claim, the

Court lacks jurisdiction over this claim because Plaintiffs have failed to exhaust their

administrative remedies prior to bringing a Title VII claim against the federal

government. *See Mahoney v. U.S. Postal Serv.*, 884 F.2d 1194, 1196 (9th Cir. 1989)

27
28

1    (failure to file Title VII suit within the 30-day time limit from receipt of notice of final

2    EEOC action is a jurisdictional defect).

3        Finally, to the extent Federal Employee Plaintiffs assert a claim for violation of

4    WLAD against Federal Defendants, that claim is barred by sovereign immunity.

5

6    Federal Defendants are sued here in their official capacities, and therefore cannot be

7    liable under state law unless Congress has waived the United States' sovereign

8    immunity.  *See Ibrahim v. Dep't of Homeland Sec.*, 538 F.3d 1250, 1258 (9th Cir.

9

10   2008).  Congress has not waived the United States' sovereign immunity for WLAD

11   claims, so Plaintiffs' WLAD claim against Federal Defendants is barred.  The Court

12

13   should dismiss this claim against Federal Defendants.

14
        E.   Plaintiffs' state law claims (Counts 5 and 6) remain insufficiently pled
15           and barred by sovereign immunity.

16       Notwithstanding the Court's prior declination of supplemental jurisdiction over

17   Plaintiffs' state law claims, ECF No. 58 at 9, Plaintiffs again assert state law claims

18
     for breach of contract and intentional or negligent infliction of emotional distress.
19

20   ECF No. 60 at ¶¶ 394–404.  Plaintiffs' conclusory assertions in support of these

21   claims again fail Rule 12's plausible pleading standard.  *Twombly*, 550 U.S. at 570.

22

23       On their breach of contract claim, Plaintiffs' operative allegations remain the

24   same:  "[t]here exists a binding contract relationship between each Plaintiff and his or

25
     her individual employer" and "Defendants have made it clear they intend to breach
26

27   each Plaintiffs' contract with the respective Defendant."  ECF No. 60 at ¶¶ 395, 397.

28

Plaintiffs still do not identify any specifics about what "binding contract relationship" exists between them and Federal Defendants, nor do they identify what contract term is about to be breached.  Plaintiffs also develop no theory in support of their vague Takings Clause argument.  ECF No. 60 at ¶ 398.  And again, Plaintiffs' language here exposes the ripeness issue that permeates this case—an allegation that Defendants supposedly "intend to breach" a contract is not an allegation that Defendants *have* breached a contract.  Plaintiffs fail to sufficiently allege a breach of contract claim.

Plaintiffs' claim for intentional or negligent infliction of emotional distress remains identical in substance to the initial Complaint, asserting only that "Defendants engaged in extreme and outrageous conduct toward Plaintiffs" and that Plaintiffs have been injured.  ECF No. 60 at ¶¶ 400–04.  Plaintiffs again plead no specific factual allegations in support of this claim.  Plaintiffs' conclusory recitation of the elements of an IIED/NIED claim amount to nothing more than "unadorned, the-defendant-unlawfully-harmed-me" allegations that fail to state a claim.  *Iqbal*, 556 U.S. at 678.

And as to both Counts 5 and 6, Plaintiffs' state law claims against Federal Defendants are barred by sovereign immunity.  *Ibrahim*, 538 F.3d at 1258.  The Court should dismiss Counts 5 and 6 of the Complaint against Federal Defendants.

F. <u>Plaintiffs do not state a viable cause of action for violation of the Procurement Act and their arguments fail on the merits (Count 8)</u>

Plaintiffs purport to assert a statutory cause of action for violation of the Procurement Act, 40 U.S.C. §§ 101, 121.  ECF No. 60 at ¶¶ 410–24.  But Plaintiffs

fail to identify any authority that permits them to assert the Procurement Act itself as a

privately enforceable cause of action.  The Court should dismiss this claim as

improperly pled.

Moreover, Plaintiff's arguments about the Procurement Act fail on the merits.

The Contractor Order is a valid exercise of the President's authority to direct federal

contracting.[4]  The purpose of the Procurement Act is "to provide the Federal

Government with an economical and efficient system" for, among other things,

"procuring and supplying property and nonpersonal services."  40 U.S.C. § 101.  The

Procurement Act empowers the President to "prescribe policies and directives that the

President considers necessary to carry out" the Act's provisions, so long as the

directives are "consistent" with the Act.  40 U.S.C. § 121(a).

Presidential directives are consistent with this authority if they are "reasonably

related to the Procurement Act's purpose of ensuring efficiency and economy in

government procurement."  *Liberty Mut. Ins. Co. v. Friedman*, 639 F.2d 164, 170 (4th

Cir. 1981).  Courts have "emphasized the necessary flexibility and 'broad-ranging

authority'" that the Procurement Act provides.  *UAW-Labor Emp. and Training Corp.*

---

[4] The Contractor Order presently remains enjoined on a nationwide basis while an

appeal of the preliminary injunction is pending in the Eleventh Circuit Court of

Appeals.  *Georgia v. Biden*, No. 21-14269.  Briefing in that appeal is expected to be

completed in late February, and the case is not yet scheduled for oral argument.

FEDERAL DEFENDANTS' MOTION TO DISMISS - 16

*v. Chao*, 325 F.3d 360, 366 (D.C. Cir. 2003) (quoting *AFL-CIO v. Kahn*, 618 F.2d 784, 789 (D.C. Cir. 1979) (en banc)).  The standard is "lenient" and can be satisfied even when "the order might in fact increase procurement costs" in the short run.  *Id.* at 366–67.  Courts find a nexus even when "[t]he link may seem attenuated" and even if one can "advance an argument claiming opposite effects or no effects at all."  *Id.*

"[T]his close nexus requirement [] mean[s] little more than that President's explanation for how an Executive Order promotes efficiency and economy must be reasonable and rational."  *Chamber of Com. of U.S. v. Napolitano*, 648 F. Supp. 2d 726, 738 (D. Md. 2009) (one sentence explanation sufficient); *see also Chamber of Com. of U.S. v. Reich*, 74 F.3d 1322, 1333 (D.C. Cir. 1996) ("The President's authority to pursue 'efficient and economic' procurement . . . certainly reach[es] beyond any narrow concept of efficiency and economy in procurement.").  And indeed, the Procurement Act has been interpreted to allow the President to direct federal contracting as it relates to a variety of substantive issues.  *See, e.g.*, *City of Albuquerque v. U.S. Dep't of Interior*, 379 F.3d 901 (10th Cir. 2004) (urban renewal); *Chao*, 325 F.3d 360 (collective bargaining rights); *Am. Fed'n of Gov't Emps., AFL-CIO v. Carmen*, 669 F.2d 815 (D.C. Cir. 1981) (energy conservation during an oil crisis); *Kahn*, 618 F.2d at 790 (noting multiple Presidents "prominent[ly]" used FPASA to impose "a series of anti-discrimination requirements for Government contractors"); *Napolitano*, 648 F. Supp. 2d at 729 (assessing employee work eligibility through E-Verify).  The Procurement Act "emphasiz[es] the leadership role

of the President in setting Government-wide procurement policy on matters common to all agencies" and expects "the President [to] play a direct and active part in supervising the Government's management functions."  *Kahn*, 618 F.2d at 788.

As this Court has already recognized, the Contractor Order "easily satisfies the nexus requirement" of the Procurement Act.  ECF No. 58 at 16.  The President explained in Section 1 of the Contractor Order:

> This order promotes economy and efficiency in Federal procurement by ensuring that the parties that contract with the Federal Government provide adequate COVID-19 safeguards to their workers performing on or in connection with a Federal Government contract . . . .  These safeguards will decrease the spread of COVID-19, which will decrease worker absence, reduce labor costs, and improve the efficiency of contractors and subcontractors at sites where they are performing work for the Federal Government.

86 Fed. Reg. at 50,985.

The Contractor Order is concerned with protecting the federal government's financial and operational interests as a contracting party.  Ensuring that its contractors do not suffer major disruptions from COVID-19 accomplishes just that.  COVID-19 is an airborne disease that spreads quickly, so in order to ensure that contractors do not spread COVID-19 to one another, all contractors working in any given physical workspace must be vaccinated.  This is fully explained by the OMB Determination's approval of the Safer Workforce Taskforce's COVID-19 safety protocols, which lays out that increased vaccinations will "decrease the spread of COVID-19, which will in turn decrease worker absence, save labor costs on net, and thereby improve efficiency in Federal contracting."  Determination of the Acting OMB Director Regarding the

Revised Safer Federal Workforce Taskforce Guidance for Federal Contractors, 86 Fed. Reg. 63,418, 63,421–22 (Nov. 16, 2021).  To anyone who has lived through the COVID-19 pandemic and its resulting economic turmoil, the nexus between reducing the spread of COVID-19 and economic efficiency should be self-evident. While Plaintiffs may disagree with the President's policy or consider it unwise, the Executive Order's explanation is sufficient to show the required nexus between the policy and promoting economy and efficiency.

Plaintiffs' new reliance on the Supreme Court's recent decision in *National Federation of Independent Business v. Occupational Safety and Health Administration (NFIB)*, 142 S. Ct. 661 (2022) (per curiam) is misplaced.  ECF No. 60 at ¶¶ 6–8.  The Supreme Court's statutory analysis in *NFIB* rested on principles of statutory construction that apply only where an administrative agency's action would bring about an enormous and transformative expansion of its regulatory authority— not where, as here, the President exercises well-established power to manage the federal government's proprietary interests.  In *NFIB*, the Supreme Court considered whether the Occupational Safety and Health Act ("OSH Act"), 29 U.S.C. § 651 *et seq.*, authorized the Occupational Safety and Health Administration ("OSHA") to issue an emergency temporary standard requiring "virtually all employers with at least 100 employees" to impose COVID-19 vaccination-or-testing obligations on their employees.  142 S. Ct. at 662, 665.  Based on its observation that OSHA's mandate applies to "84 million Americans" and represents a significant expansion of OSHA's

regulatory authority, the Court relied on the proposition that Congress is expected "to speak clearly when authorizing an agency to exercise [such] powers of vast economic and political significance." *Id.* at 665 (quoting *Ala. Ass'n of Realtors v. Dep't of Health and Hum. Servs.*, 141 S. Ct. 2485, 2489 (2021) (per curiam)). The Court held that Congress had not "plainly authorized" OSHA's vaccination-or-test standard because the OSH Act permits OSHA to regulation only "*occupational* hazards," and COVID-19 is not a hazard unique to the workplace. *Id.* at 665–66.

The "major questions" principles applied in *NFIB* are relevant only when an administrative action represents an "enormous and transformative expansion in [an agency's] *regulatory* authority." *Utility Air Regul. Grp. v. EPA*, 573 U.S. 302, 324 (2014) (emphasis added); *accord NFIB*, 142 S. Ct. at 665 ("Permitting OSHA to regulate the hazards of daily life . . . would significantly expand OSHA's regulatory authority . . . ."); *see also, e.g.*, *Ala. Ass'n of Realtors*, 141 S. Ct. at 2489; *King v. Burwell*, 576 U.S. 473, 485–86 (2015); *Gonzales v. Oregon*, 546 U.S. 243, 267–68 (2006); *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 160 (2000). In promulgating the Contractor Order, the President did not exercise "*regulatory* authority" of any kind. Rather, the President exercised the federal government's *proprietary* authority, as the purchaser of goods and services from those with whom it contracts. *See Perkins v. Lukens Steel Co.*, 310 U.S. 113, 127 (1940) ("Like private individuals and businesses, the Government enjoys the unrestricted power . . . to determine those with whom it will deal, and to fix the terms and conditions upon

which it will make needed purchases."). Unlike OSHA's vaccination-or-test standard, which directly regulated private employers pursuant to Congress' Commerce Clause authority, the Contractor Order imposes no generally applicable regulation on any industry, entity, or individual. Instead, as an exercise of Congress' powers under distinct constitutional provisions, including the Spending Clause, the Contractor Order reflects the President's management decision to do business with only those entities willing to perform work for the federal government under certain contractual standards.

The Supreme Court's other recent COVID-19 vaccination decision in *Biden v. Missouri*, 142 S. Ct. 647 (2022) (per curiam), provides this Court with relevant instruction: namely, that the President's "longstanding practice" of using his authority under the Procurement Act to address a wide range of concerns related to federal contractor operations is a strong indication that the Contractor Order is a legitimate exercise of such authority. *See Missouri*, 142 S. Ct. at 652. In *Missouri*, the Supreme Court reviewed a Department of Health and Human Services ("HHS") regulation requiring hospitals and other healthcare facilities that participate in Medicare or Medicaid to ensure that their staff are either vaccinated against COVID-19 or receive a religious or medical exception. 142 S. Ct. at 650. Like this case, *Missouri* involved a broad grant of statutory authority related to the expenditure of federal funds. *Compare id.* at 652 ("Congress has authorized the Secretary to impose conditions on the receipt of Medicaid and Medicare funds that 'the Secretary finds necessary in the

interest of the health and safety of individuals who are furnished services.'" (quoting 42 U.S.C. § 1395x(e)(9))), *with* 40 U.S.C. §§ 101, 121 (authorizing the President to "prescribe policies and directives that the President considers necessary" to promote "an economical and efficient system" for federal procurement).  Crucially, in determining the scope of HHS's authority, the Supreme Court looked to the agency's "longstanding practice . . . in implementing the relevant statutory authorities." *Missouri*, 142 S. Ct. at 652.  Based on HHS's historical practice of imposing "conditions that address the safe and effective provision of healthcare, not simply sound accounting," the Court rejected a narrow reading of the statute's broad language because it was inconsistent with this historical precedent.  *Id.*

Here, the Executive Branch's longstanding practice of issuing executive orders regarding federal procurement is similarly instructive and underscores the validity of the Contractor Order.  As the cases cited *supra* at p. 17 demonstrate, the Procurement Act has long been understood to grant the President broad authority and discretion to manage the federal procurement system, and the Contractor Order is a permissible exercise of that authority.  Just as the Supreme Court concluded that the Executive Branch may make COVID-19 vaccination a "condition of participation" in Medicare and Medicaid, 142 S. Ct. at 654, this Court should hold that the President, like any other contractor, may make COVID-19 vaccination a condition of participation in federal contracting.

G. <u>The President is statutorily not subject to the Office of Federal Procurement Policy Act (Count 9).</u>

Plaintiffs' claims for violation of federal procurement policy are unchanged from the initial complaint and still fail as a matter of law. Plaintiffs seek to hold the President liable for failing to comply with the notice and comment provisions of the Office of Federal Procurement Policy ("OFPP") Act. ECF No. 60 at ¶¶ 425–34 (citing 41 U.S.C. § 1707(a)(1)). Plaintiffs again identify no legal authority that allows them to assert the OFPP Act itself as a cause of action. Moreover, the OFPP Act's notice and comment provision only applies to "executive agencies," which does not include the President or the White House in its statutory definition. 41 U.S.C. § 133. Because the President is not bound by the OFPP Act's notice and comment procedures, this claim should be dismissed.

H. <u>Plaintiffs' constitutional structural arguments (Counts 10–13, 17) are not standalone causes of action and are insufficiently pled.</u>

Plaintiffs raise a series of constitutional structural arguments seeking to invalidate the Executive Orders as generally violating principles of federalism and separation of powers. These claims should be dismissed for several reasons.

First, Plaintiffs' abstract legal arguments are untethered to any specific cause of action. Plaintiffs are certainly entitled to assert arguments about the constitutionality of the Executive Orders, but in order to state a plausible claim for relief, they must assert those arguments via an actual cause of action. Plaintiffs should be required to re-plead these arguments through a cognizable cause of action.

FEDERAL DEFENDANTS' MOTION TO DISMISS - 23

Second, Plaintiffs' arguments are insufficiently pled.  Plaintiffs' pleading of these claims is difficult to discern at best.  While Plaintiffs have recited a series of constitutional terms of art, their pleadings jumble multiple distinct constitutional principles in such an incomprehensible way that none of their claims are plausible on their face.  *Twombly*, 550 U.S. at 570.

As an example, Count 17 of the Complaint purports to raise a Commerce Clause challenge to the Executive Orders.  But the substance of Count 17 is devoted to arguments about federalism and the anticommandeering principle.  ECF No. 60 at ¶¶ 496–98.  Count 11 of the Complaint purports to claim that the Executive Orders violate separation of powers and federalism principles, but the substance of Count 11 seems to challenge the constitutionality of the Procurement Act itself under Article I, Section 8 of the Constitution.  ECF No. 60 at ¶¶ 449–57.  Count 12 of the Complaint purports to assert that the Executive Orders violate federalism principles by intruding on states' police powers, but it is unclear how this cause of action is different from the federalism claims that are also asserted in Count 11 and argued in support of Count 17.  *Compare* ECF No. 60 at ¶¶ 458–63 *with* ¶¶ 497–98.  While Plaintiffs have recited constitutional law buzzwords, their pleadings are substantively incomprehensible.  The Court should dismiss these constitutional structural arguments as insufficiently pled.

1

2

### I.    Plaintiffs' APA claims (Counts 14–16) fail for lack of a proper defendant.

3

4

5

6

7

8

9

10

11

12

13

Plaintiffs raise three claims that the Federal Acquisition Regulatory ("FAR") Council's class deviation, the OMB Determination, and the Executive Orders themselves all violate the APA.  ECF No. 60 at ¶¶ 468–95.  Presumably Plaintiffs again intended to assert all three APA claims against President Biden, as the other Federal Defendants have no connection to the promulgation of the Executive Orders, the FAR deviation, or the OMB determination.  But the President cannot be sued under the APA.  *Franklin v. Massachusetts*, 505 U.S. 788, 796 (1992).  Because Plaintiffs' APA claims fail to name a proper defendant, they should be dismissed for failure to state a claim.

14

15

16

### J.    Plaintiffs fail to adequately plead their equal protection challenge (Count 2).

17

18

19

20

21

22

23

24

25

26

27

28

Plaintiffs again assert that their equal protection rights are being violated on the basis of their status as having "natural immunity" against COVID-19.  ECF No. 60 at ¶ 376.  Again, aside from the basic problem that still only a handful of Plaintiffs have alleged their "natural immunity" status, a term that they also fail to define, Plaintiffs fail to articulate an equal protection claim.  "Natural immunity" is not a suspect class, so Plaintiffs' equal protection claim is subject to rational basis review.  *See Tandon v. Newsom*, 992 F.3d 916, 930 (9th Cir. 2021).  And Plaintiffs wholly fail to plead how they are being treated differently than other similarly situated individuals on the basis of their status.  *See City of Cleburne, Tex. v. Cleburne Living Center*, 473 U.S. 432,

439 (1985) ("The Equal Protection Clause . . . is essentially a direction that all persons similarly situated should be treated alike.")  Plaintiffs' equal protection claim should be dismissed for failure to state a claim.

### K. The vaccination mandates do not violate Plaintiffs' substantive due process rights (Count 7).

Plaintiffs have supplemented their substantive due process claim with additional caselaw, but their central argument remains foreclosed by longstanding precedent.  As the Supreme Court explained in addressing another vaccine mandate over 115 years ago, "the liberty secured by the Constitution of the United States to every person within its jurisdiction does not import an absolute right in each person to be, at all times and in all circumstances, wholly freed from restraint."  *Jacobson v. Massachusetts*, 197 U.S. 11, 26 (1905).  The Court continued, "[r]eal liberty for all could not exist under the operation of a principle which recognizes the right of each individual person to use his own, whether in respect of his person or his property, regardless of the injury that may be done to others."  *Id.*

Courts today continue to rely on *Jacobson* to find that vaccination requirements such as those at issue here do not burden any "fundamental right ingrained in the American legal tradition."  *Klaassen v. Tr. of Ind. Univ.*, 7 F.4th 592, 593 (7th Cir. 2021).  As the cases cited in Federal Defendants' TRO opposition brief demonstrate, Plaintiffs do not have a fundamental liberty interest in avoiding vaccination, their claims should be evaluated under rational basis review, and numerous courts,

including this Court, have recognized that stemming the spread of COVID-19 is a legitimate state interest.  *See* ECF No. 41 at 28–30.

Plaintiffs' citation to inapplicable privacy case law does not change this legal landscape.  ECF No. 60 at ¶¶ 407.  These "unadorned, the-defendant-unlawfully-harmed-me" allegations are insufficient to meet Plaintiffs' pleading burden.  *Iqbal*, 556 U.S. at 678.  The Court should dismiss Plaintiffs' substantive due process claims for failure to state a claim.

L.  Plaintiffs' free exercise claim is unripe and insufficiently pled (Count 1).

The Amended Complaint's free exercise claim contains the same flaws as the initial Complaint.  To the extent Plaintiffs intended to assert a facial First Amendment challenge to the Executive Orders, such claim would fail on its face because the vaccination mandates each provide for exceptions "as required by law."  86 Fed. Reg. at 50,990; 86 Fed. Reg. at 50,985.  And to the extent the Federal Employee Plaintiffs assert an as-applied challenge to the vaccination mandate against Federal Defendants, their claims remain unripe and insufficiently pled.

First, as discussed *supra*, no Federal Employee Plaintiff has alleged that their request for religious accommodations has been denied, so their claims are speculative at this point and are therefore unripe for review.  Second, even if the Federal Employee Plaintiffs had ripe claims, those Plaintiffs have failed to allege any information about the nature of their religious beliefs or practices, their job duties, and the interaction between those things.  Plaintiffs purport to assert a claim under the

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Religious Freedom Restoration Act ("RFRA"), but they still fail to allege any specific facts that would allow this Court, and Federal Defendants, to evaluate their claims under RFRA's legal framework. Even under the deferential Rule 12 standard, the Court is not required to accept the sincerity of Plaintiffs' asserted religious objections absent *any* supporting factual allegations. *See Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 717 n. 28 (2014) ("To qualify for RFRA's protection, an asserted belief must be 'sincere'; a [claimant's] pretextual assertion of a religious belief in order to obtain an exemption . . . would fail."). To proceed past the pleading stage, the plaintiff's factual allegations, accepted as true, must state a claim that is "plausible on its face." *Twombly*, 550 U.S. at 570. Having failed to allege sufficient factual support for their free exercise claims, the Court should dismiss this count for failure to state a claim.

M. <u>Plaintiffs' Section 1983 claim (Count 18) cannot stand as an independent cause of action and cannot be asserted against Federal Defendants.</u>

Plaintiffs' final cause of action is a freestanding claim for relief under 42 U.S.C. § 1983. But Section 1983 "merely provides a mechanism for enforcing individual rights 'secured' elsewhere," and therefore does not create a standalone cause of action untethered to another alleged legal violation. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 285 (2002) ("[Section] 1983 by itself does not protect anyone against anything").

Additionally, Plaintiffs cannot assert their Section 1983 claim against Federal Defendants. Federal actors are only subject to Section 1983 liability in limited

circumstances, which Plaintiffs have not alleged here. *See Cabrera v. Martin*, 973

F.2d 735, 741 (9th Cir. 1992). Moreover, President Biden is immune from suit for

damages related to his official duties. *Forrester v. White*, 484 U.S. 219, 225 (1988).

And although Plaintiffs have also cited *Bivens v. Six Unknown Federal Agents of*

*Federal Bureau of Narcotics*, 403 U.S. 388, 396 (1971), in support of this count,

*Bivens* liability does not extend to federal officials in their official capacity, which is

the only capacity in which Plaintiffs have named Federal Defendants here. *Consejo*

*de Desarrollo Economico de Mexicali, A.C. v. United States*, 482 F.3d 1157, 1173

(9th Cir. 2007); *see also Ziglar v. Abbasi*, 137 S. Ct. 1843, 1860 (2017) ("[A] *Bivens*

action is not a proper vehicle for altering an entity's policy." (citation and quotations

omitted)). Plaintiffs' freestanding Section 1983 and/or *Bivens* claim should be

dismissed.

## IV.    Conclusion

For the reasons set forth above, Federal Defendants respectfully request that

Plaintiff's claims against Federal Defendants all be dismissed either for lack of subject

matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) or for failure to state a claim

pursuant to Fed. R. Civ. P. 12(b)(6), and that Federal Defendants be dismissed as

parties to this suit.

//

//

//

FEDERAL DEFENDANTS' MOTION TO DISMISS - 29

DATED this 1st day of February 2022.

Vanessa R. Waldref
United States Attorney

s/Molly M.S. Smith
John T. Drake
Molly M.S. Smith
Assistant United States Attorneys
Attorneys for Federal Defendants

1

**CERTIFICATE OF SERVICE**

2

I hereby certify that on February 1, 2022, I caused to be delivered via the

3

method listed below the document to which this Certificate of Service is attached

4

5

(plus any exhibits and/or attachments) to the following:

6

| NAME & ADDRESS | Method of Delivery |
|---|---|
| Nathan J. Arnold<br>Arnold & Jacobowitz PLLC<br>2701 First Avenue, Suite 200<br>Seattle, WA 98121<br>nathan@CAJlawyers.com | ☒CM/ECF System<br>☐Electronic Mail<br>☐U.S. Mail<br>☐Other: _____ |
| Simon Peter Serrano<br>Silent Majority Foundation<br>5426 N. Rd. 68, Ste. D, Box 105<br>Pasco, WA 99301<br>pete@silentmajorityfoundation.org | ☒CM/ECF System<br>☐Electronic Mail<br>☐U.S. Mail<br>☐Other: _____ |
| Mark N. Bartlett<br>Arthur A. Simpson<br>Davis Wright Tremaine LLP<br>920 Fifth Avenue, Suite 3300<br>Seattle, WA 98104-1610<br>markbartlett@dwt.com<br>arthursimpson@dwt.com | ☒CM/ECF System<br>☐Electronic Mail<br>☐U.S. Mail<br>☐Other: _____ |
| Kevin C. Baumgardner<br>Corr Cronin LLP<br>1001 Fourth Ave., Suite 3900<br>Seattle, WA 98154<br>kbaumgardner@corrcronin.com | ☒CM/ECF System<br>☐Electronic Mail<br>☐U.S. Mail<br>☐Other: _____ |

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

*s/Molly M.S. Smith*

26

Molly M.S. Smith

27

28

FEDERAL DEFENDANTS' MOTION TO DISMISS - 31