1   Vanessa R. Waldref
2   United States Attorney
    Eastern District of Washington
3   John T. Drake
4   Molly M.S. Smith
    Assistant United States Attorneys
5   Post Office Box 1494
6   Spokane, WA 99210-1494
    Telephone: (509) 353-2767
7

8

9                    UNITED STATES DISTRICT COURT
             FOR THE EASTERN DISTRICT OF WASHINGTON
10

11  DAVID G. DONOVAN, *et al.*,
                                        No. 4:21-CV-05148-TOR
12                      Plaintiffs,
13           v.                         **DEFENDANTS' MOTION TO
                                        DISMISS SECOND AMENDED
14  JOSEPH R. BIDEN, in his official    COMPLAINT**
    capacity as President of the United States
15  of America, JENNIFER               05/09/2022
16  GRANHOLM, in her official capacity as  Without Oral Argument
    Secretary of the UNITED STATES
17  DEPARTMENT OF ENERGY, BRIAN
    VANCE in his official capacity as
18  Manager of the UNITED STATES
    DEPARTMENT OF ENERGY Hanford
19  Site,
20                      Defendants.
21

22

23

24

25

26

27

28

DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT - i

TABLE OF CONTENTS

**I.    Introduction and Procedural History** .................................................................1

**II.   Motion to Dismiss Standard** ...........................................................................3

**III.  Argument** ..................................................................................................4

A. Plaintiffs fail to state any claim against Secretary Granholm or Brian Vance... .................................................................................................................4

B. The overwhelming majority of Plaintiffs lack standing to sue. .......................5

  *i. Plaintiffs who have not applied for any exception face self-inflicted injuries that cannot support standing.* .........................................................7

  *ii. Plaintiffs who have already been vaccinated or who have been provided accommodations do not face an injury that gives them standing.* .............8

  *iii. Plaintiffs who have not alleged their exception status have not met their burden of establishing jurisdiction.* ............................................................9

  *iv. Plaintiffs who have not yet had their accommodation requests determined raise unripe claims.* ..................................................................................11

C. Plaintiffs do not state a viable cause of action for violation of the Procurement Act and their arguments fail on the merits (Count 4) ...............13

D. The President is statutorily not subject to the Office of Federal Procurement Policy Act (Count 5). ....................................................................................20

E. Plaintiffs' constitutional structural arguments (Counts 6–9, 13) are not standalone causes of action and are insufficiently pled.................................21

F. Plaintiffs' APA claims (Counts 10–12) fail for lack of a proper defendant. .22

G. Plaintiffs fail to adequately plead their equal protection challenge (Count 2)... .................................................................................................................23

H. The vaccination mandates do not violate Plaintiffs' substantive due process rights (Count 3). ............................................................................................24

I.  Plaintiffs' free exercise claim is unripe and insufficiently pled (Count 1). ...25

J.  Plaintiffs Should Not Be Granted Leave to Amend. ......................................26

**IV.   Conclusion...........................................................................................28**

Defendants Joseph R. Biden, Jennifer Granholm, and Brian Vance, through counsel, respectfully move to dismiss Plaintiffs' Second Amended Complaint (ECF No. 74) with prejudice pursuant to Fed. R. Civ. P. 12(b)(1) and (6).

## I.    Introduction and Procedural History

The ongoing COVID-19 pandemic poses a serious threat to public health and the economy.  The illness and mortality caused by COVID-19 have led to serious disruptions for organizations, employees, and contractors across the United States, and the federal government is no exception.  Accordingly, on September 9, 2021, the President issued two Executive Orders aimed at preventing disruptions in the provision of government services by federal employees and contractors by combatting the spread of COVID-19.  *See* Requiring Coronavirus Disease 2019 Vaccination for Federal Employees, Exec. Order No. 14043, 86 Fed. Reg. 50,989, (Sept. 9, 2021) ("Employee Order"); Ensuring Adequate COVID Safety Protocols for Federal Contractors, Exec. Order No. 14,042, 86 Fed. Reg. 50,985 (Sept. 9, 2021) ("Contractor Order").[1]

_____

[1] Both Executive Orders are presently preliminarily enjoined on a nationwide basis. *Feds for Medical Freedom v. Biden*, --- F. Supp. 3d ---, 2022 WL 188329 (S.D. Tex. Jan. 21, 2022), *appeal docketed*, No. 22-40043 (5th Cir. Jan. 26, 2022) (Employee Order); *Georgia v. Biden*, --- F. Supp. 3d ---, 2021 WL 5779939 (S.D. Ga. Dec. 7, 2021), *appeal docketed*, No. 21-14269 (11th Cir. Dec. 10, 2021) (Contractor Order).

Plaintiffs, a group of federal employees and federal contractor employees associated with the Department of Energy ("DOE") Hanford Site, filed an initial Complaint seeking to challenge these vaccination mandates. ECF No. 1. Plaintiffs sought preliminary injunctive relief, which the Court denied. ECF No. 58. Defendants then moved to dismiss the initial Complaint. ECF No. 59. Plaintiffs responded by filing their First Amended Complaint as a matter of course. ECF No. 60. Defendants moved to dismiss the First Amended Complaint, raising nearly identical procedural arguments in support of this second motion to dismiss. ECF No. 68. By written stipulation of all parties, Plaintiffs then filed their Second Amended Complaint. ECF No. 74.

The Second Amended Complaint differs from the First Amended Complaint in that it eliminates all claims asserted against the former Federal Contractor Defendants and eliminates the claims for violation of the Americans with Disabilities Act, wrongful termination under Title VII and the Washington Law Against Discrimination, breach of contract, intentional or negligent infliction of emotional distress, and the freestanding claim for violation of 42 U.S.C. § 1983. *Compare* ECF No. 60 *with* ECF No. 74. But for the remaining claims, the underlying procedural and jurisdictional flaws remain the same.[2] Plaintiffs wholly fail to sufficiently plead facts

---

[2] The Second Amended Complaint also reincorporates an error from the initial Complaint, in that it again fails to name all parties in the caption in compliance with

to support their individualized claims, and they fail to articulate their constitutional

arguments through a viable cause of action.  In a case with 314 individual plaintiffs

asserting both facial and as-applied challenges, Plaintiffs' failures to meet basic

pleading standards are fatal.  Even accepting Plaintiffs' current factual allegations as

true, Plaintiffs' Second Amended Complaint should be dismissed, as all causes of

action asserted are either nonjusticiable or fail to state a claim.[3]

## II.    Motion to Dismiss Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) is

addressed to the court's subject matter jurisdiction.  Questions of justiciability are

"inherently jurisdictional."  *Corrie v. Caterpillar, Inc.*, 503 F.3d 974, 981 (9th Cir.

2007).  A court may not hear claims over which it lacks subject-matter jurisdiction.

Fed. R. Civ. P. 12(h)(3).  A Rule 12(b)(1) motion may be classified as either facial, in

which case the court's inquiry is limited to the allegations in the complaint, or factual,

in which case the court may consider extrinsic evidence.  *Safe Air for Everyone v.

Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  "In resolving a factual attack on

---

Fed. R. Civ. P. 10(a).  The Court previously identified this deficiency for Plaintiffs at

the TRO stage.  ECF No. 58 at 3–4.

[3] Federal Defendants also move the Court to strike Plaintiffs' jury demand, as

Plaintiffs identify no relevant waiver of sovereign immunity that entitles them to a

jury trial.  Fed. R. Civ. P. 39(a)(2).

FEDERAL DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT - 3

jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Id.* The party asserting jurisdiction bears the burden of proof on the issue. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is addressed to the sufficiency of the pleading of claims in the complaint. Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To proceed past the pleading stage, the plaintiff's factual allegations, accepted as true, must state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While detailed factual recitations are not required, the plaintiff must come forward with more than "unadorned, the-defendant-unlawfully-harmed-me" allegations. *Id.* Formulaic recitations of the elements of a claim, supported by mere labels and conclusions, are not sufficient. *Twombly*, 550 U.S. at 555.

### III.   Argument

#### A.   Plaintiffs fail to state any claim against Secretary Granholm or Brian Vance.

As the Court correctly ruled at the TRO stage, Plaintiffs did not state a claim for relief against Mr. Vance in their initial Complaint. ECF No. 58 at 4. Plaintiffs'

FEDERAL DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT - 4

Second Amended Complaint still fails to state any claim against Mr. Vance, and it similarly fails to state a claim against Secretary Granholm.  The Second Amended Complaint identifies Brian Vance as the manager of the Hanford Site and Secretary Granholm as the Secretary of Energy.  ECF No. 74 at ¶¶ 13–14.  But Plaintiffs still have not alleged any facts to indicate how Secretary Granholm or Mr. Vance are plausibly liable for any of the specific causes of action asserted, beyond the conclusory allegation that they have "adopted and implemented" the two Executive Orders.  ECF No. 74 at ¶ 347.  In failing to make any other factual allegation regarding Secretary Granholm or Mr. Vance, Plaintiffs fail to offer more than insufficient "unadorned, the-defendant-unlawfully-harmed-me" allegations.  *Iqbal*, 556 U.S. at 678.  Additionally, Secretary Granholm and Mr. Vance appear to be the only defendants for Plaintiffs' remaining Section 1983 claims (Counts 1 and 3), as President Biden is unquestionably immune from those claims.  *Forrester v. White*, 484 U.S. 219, 225 (1988).  But federal actors are only subject to Section 1983 liability in limited circumstances, which Plaintiffs have not alleged here.  *See Cabrera v. Martin*, 973 F.2d 735, 741 (9th Cir. 1992).  The Court should dismiss all claims asserted against Secretary Granholm and Mr. Vance.

B.  The overwhelming majority of Plaintiffs lack standing to sue.

Federal Defendants previously submitted detailed briefing challenging every Plaintiff's standing to sue in this case.  ECF No. 59 at 4–11.  As with the First Amended Complaint, the Second Amended Complaint now alleges sufficient facts to

indicate, accepting those allegations as true, that seven Plaintiffs have suffered an actual and concrete injury, not of their own making, that supports their standing to sue.  ECF No. 74 at ¶¶ 53, 65, 67, 78, 130, 171, 251.  However, the remaining 307 Plaintiffs continue to lack standing, and the Court lacks jurisdiction over their claims. Although the Second Amended Complaint makes different specific factual allegations regarding the individual Plaintiffs' circumstances, these Plaintiffs' claims still largely fall into the same categories of being unripe, lacking injury, facing self-inflicted injuries, or insufficiently pleading their claims.

Article III courts are courts of limited jurisdiction, and questions of justiciability are "inherently jurisdictional."  *See Corrie*, 503 F.3d at 981.  Challenges to standing are properly asserted in a Rule 12(b)(1) motion.  *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010).  The "irreducible constitutional minimum of standing" requires that the plaintiff suffer an "injury in fact" that is "concrete and particularized" and "actual or imminent," that there is a "causal connection between the injury and the conduct complained of," and that it is "likely" that the injury is redressable by a favorable decision.  *Lujan*, 504 U.S. at 560–61 (citations omitted).

Plaintiffs' alleged injuries in this case are based on their supposed forced choice between receiving an unwanted vaccine or jeopardizing their continued employment. They explicitly identify their "imminent and wrongful termination" as the harm they face.  ECF No. 74 at ¶ 8.  But as in the initial and First Amended Complaints, the vast

majority of Plaintiffs do not presently face this injury, and if they do, that injury is self-inflicted.  Accepting as true at this stage of the proceedings that Plaintiffs have good-faith medical or religious objections to vaccination, Plaintiffs are able to pursue an exception and accommodations from the vaccine mandates.  Based on the allegations now raised in the Second Amended Complaint, Plaintiffs have generally pursued that option as follows:  (1) some have not applied for an exception to the vaccination requirement; (2) some are already vaccinated or have been granted an accommodation; (3) some have not alleged the status of any request for an exception; and (4) some have sought an exception but have not yet had accommodations determined.  For slightly different reasons, each of these plaintiff categories lack standing to pursue their claims.

> ### i.  *Plaintiffs who have not applied for any exception face self-inflicted injuries that cannot support standing.*

Three Plaintiffs in this case affirmatively pled that they have not applied for an exception to their employers' implementation of the vaccine mandates.  ECF No. 74 at ¶¶ 46, 173, 223.  One other Plaintiff alleges he moved out of state before his accommodation request was determined, and he has since been terminated because he cannot telework from out of state.  ECF No. 74 at ¶ 37.  These Plaintiffs lack standing because their injuries are self-imposed.

In order to meet the causation requirement of the standing test, a plaintiff's injury must be "fairly traceable to the challenged action."  *Monsanto Co. v. Geertson*

*Seed Farms*, 561 U.S. 139, 149 (2010).  Plaintiffs "cannot manufacture standing merely by inflicting harm on themselves," as such harms are not fairly traceable to the defendant's conduct.  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013).  The Executive Orders challenged here implement vaccination requirements, but they allow for exceptions as required by law.  Plaintiffs who have good-faith medical or religious objections to vaccination have the ability to seek exceptions from the requirement by seeking accommodations from their employers.  But the three Plaintiffs who have declined to pursue exceptions, and the one who disqualified himself from employment before completing that process, do not face potential termination because the vaccine mandates unduly burden their legal rights; rather, they are facing potential termination, or actual termination, because they declined to fully pursue the exception and accommodation process available to them.  That injury is not traceable to Defendants.  Because these Plaintiffs' claimed injuries are self-inflicted, they are insufficient to support standing to sue and these Plaintiffs should be dismissed from this case.

> ii.  *Plaintiffs who have already been vaccinated or who have been provided accommodations do not face an injury that gives them standing.*

The Plaintiffs in this case who are already vaccinated, and those who have received accommodations from their employers, do not have standing in this case because they are fully compliant with the vaccination mandates and do not face the injuries alleged in the Amended Complaint.

The "injury in fact" component of standing "requires that the party seeking review be himself among the injured." *Lujan*, 504 U.S. at 563 (citation omitted). Of the 314 Plaintiffs in this case, 56 have alleged that they have been granted some form of accommodation by their employer. ECF No. 74 at ¶¶ 21–23, 31, 34, 39, 41, 45, 49, 50, 52, 59, 63, 69, 73, 80, 88, 91, 94, 115, 117, 122, 126, 127, 134, 140, 143, 146, 160–62, 170, 176, 184, 186, 194, 202, 219, 222, 224, 227, 229, 239, 264, 268, 269, 272, 288, 301–04, 310–12, 322. Three other Plaintiffs have alleged that they are already fully vaccinated and are therefore compliant with the vaccination mandate. ECF No. 74 at ¶¶ 70, 104, 172. Together, these 59 Plaintiffs do not face termination from their employment based on the challenged vaccination mandates because they are fully compliant with the vaccination requirement, either by becoming fully vaccinated or by obtaining a legal exception from the policy. These Plaintiffs therefore do not face the injury they allege to support their standing to sue in this case, and their claims should be dismissed.

>   iii. *Plaintiffs who have not alleged their exception status have not met their burden of establishing jurisdiction.*

Some Plaintiffs have not alleged any information about whether they have sought exception requests, and therefore have not sufficiently pled information to establish that they have standing to sue. "The party invoking federal jurisdiction bears the burden of establishing standing." *Clapper*, 568 U.S. at 411–12 (citation and quotation marks omitted). Since standing is "an indispensable part of the plaintiff's

1   case, each element must be supported in the same way as any other matter on which

2   the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence

3   required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561.

4

5       Twenty Plaintiffs here have alleged their job titles, but have alleged no

6   information about their vaccination status, the nature of their objection, or whether

7   they have pursued an exception from the vaccination requirement.  ECF No. 74 at

8   ¶¶ 32, 99–101, 109, 120, 135, 149, 183, 191, 209, 213, 220–21, 226, 275, 278, 305,

9

10  314, 321.  Three others have alleged that they are partially vaccinated, but do not

11  indicate whether they have pursued an exception from the remainder of the

12  vaccination requirement.  ECF No. 74 at ¶¶ 114, 130, 254.  These allegations are

13  insufficient to meet Plaintiffs' burden of establishing they have standing.  If any of

14  these Plaintiffs who have good-faith religious or medical objections did not apply for

15  an exception from the vaccination requirement, they fall into the first category of

16  plaintiffs whose injuries are self-inflicted and not traceable to the challenged

17  Executive Orders.  If any of these Plaintiffs are granted accommodations, they will be

18  compliant with the vaccination requirement and will fall into the second category of

19  plaintiffs who do not face any imminent injury in fact.  Without alleging more

20  information, it is impossible to tell whether these Plaintiffs have standing.[4]  They

21

22  _____

23  [4] As was true in the First Amended Complaint, eight Plaintiffs fail to identify their

24  employers, so it is impossible to determine from the pleadings whether these Plaintiffs

1  therefore fail to meet their burden of establishing standing at this stage in the

2  proceedings, and their claims should be dismissed.

3

4             *iv.  Plaintiffs who have not yet had their accommodation requests*
   *determined raise unripe claims.*

5        The remainder of the individually named Plaintiffs allege that they have not yet

6

7  been granted accommodations, generally following the pattern pleading that the

8  Plaintiff has "submitted a religious and/or medical exemption, "accepted by" the

9

10 employer, "but has been provided no accommodation" or "was originally not provided

11 an accommodation."  The Court should dismiss these claims as unripe.

12       The ripeness doctrine guards against "premature adjudication" of abstract

13
   disagreements and theoretical harms.  *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538
14

15 U.S. 803, 807–08 (2003) (citation omitted).  Ripeness contains both a constitutional

16 and a prudential component.  *Coons v. Lew*, 762 F.3d 891, 897 (9th Cir. 2014).  The

17
   constitutional component derives from Article III, which limits the jurisdiction of
18

19 federal courts to deciding actual cases or controversies.  *Id.*  A case is not

20 "constitutionally" ripe when the plaintiff's entitlement to relief depends on

21
   "contingent future events that may not occur as anticipated, or indeed may not occur
22

23 at all."  *Trump v. New York*, 141 S. Ct. 530, 535 (2020) (per curiam) (citation

24 omitted).  The prudential component of the ripeness inquiry focuses on whether the

25

26 ─────────────────
   are even subject to either Executive Order, let alone which one.  ECF No. 74 at ¶¶ 27,
27
   72, 80, 146, 159, 258, 305, 314.
28

FEDERAL DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT - 11

1    issues in the case are "fit for review" on the record presented.  *Nat'l Park Hosp. Ass'n*,

2    538 U.S. at 812.  The key consideration is whether "further factual development

3    would significantly advance [the Court's] ability to deal with the legal issues

4    presented."  *Id.* (quotation and citation omitted); *see also In re Coleman*, 560 F.3d

5    1000, 1009 (9th Cir. 2009) (prudential considerations allow courts to "delay

6    consideration of the issue until the pertinent facts have been well-developed in cases

7    where further factual development would aid the court's consideration").

8

9        As the Court previously recognized at the TRO stage, Plaintiffs' misleading

10    pleading language reveals that their claims are unripe.  ECF No. 58 at 12–14.

11    Plaintiffs still do not allege that their requested accommodations have been denied,

12    and therefore they do not face their alleged "imminent and wrongful termination"

13    from employment with DOE or a Hanford contractor.  ECF No. 74 at ¶ 8.  Although

14    Plaintiffs' word choice has changed between versions of the complaint, the

15    jurisdictional flaws remain the same:  allegations that a Plaintiff "was not provided an

16    accommodation" or "was not originally provided an accommodation" are still not

17    allegations that the Plaintiff was actually denied an accommodation.[5]  As both a

18

19

20

21

22

23

24    _____

25    [5] In fact, the allegation that certain Plaintiffs were not "originally" accommodated can

26    alternatively be read to mean that the accommodation is either still pending or has

27    already been granted.  If these Plaintiffs have actually been granted accommodations,

28

FEDERAL DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT - 12

constitutional and prudential matter, Plaintiffs have failed to allege claims that are ripe

for review.  The Court should dismiss these claims for lack of standing.

C. Plaintiffs do not state a viable cause of action for violation of the
Procurement Act and their arguments fail on the merits (Count 4)

Plaintiffs purport to assert a statutory cause of action for violation of the

Procurement Act, 40 U.S.C. §§ 101, 121.  ECF No. 74 at ¶¶ 369–83.  But Plaintiffs

fail to identify any authority that permits them to assert the Procurement Act itself as a

privately enforceable cause of action.  The Court should dismiss this claim as

improperly pled.

Moreover, Plaintiff's arguments about the Procurement Act fail on the merits.

The Contractor Order is a valid exercise of the President's authority to direct federal

contracting.[6]  The purpose of the Procurement Act is "to provide the Federal

_____

then they fall into the category of Plaintiffs who do not face an injury supporting

standing.

[6] The Contractor Order presently remains enjoined on a nationwide basis while an

appeal of the preliminary injunction is pending in the Eleventh Circuit Court of

Appeals.  *Georgia v. Biden*, No. 21-14269.  Oral argument is scheduled for April 8,

2022.  Plaintiffs note that a number of other federal district courts have similarly

found other plaintiffs are likely to succeed on similar legal challenges to the

Contractor Order under the Procurement Act.  ECF No. 74 at ¶ 371.  Those decisions

FEDERAL DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT - 13

Government with an economical and efficient system" for, among other things, "procuring and supplying property and nonpersonal services."  40 U.S.C. § 101.  The Procurement Act empowers the President to "prescribe policies and directives that the President considers necessary to carry out" the Act's provisions, so long as the directives are "consistent" with the Act.  40 U.S.C. § 121(a).

Presidential directives are consistent with this authority if they are "reasonably related to the Procurement Act's purpose of ensuring efficiency and economy in government procurement."  *Liberty Mut. Ins. Co. v. Friedman*, 639 F.2d 164, 170 (4th Cir. 1981).  Courts have "emphasized the necessary flexibility and 'broad-ranging authority'" that the Procurement Act provides.  *UAW-Labor Emp. and Training Corp. v. Chao*, 325 F.3d 360, 366 (D.C. Cir. 2003) (quoting *AFL-CIO v. Kahn*, 618 F.2d 784, 789 (D.C. Cir. 1979) (en banc)).  The standard is "lenient" and can be satisfied even when "the order might in fact increase procurement costs" in the short run.  *Id.* at 366–67.  Courts find a nexus even when "[t]he link may seem attenuated" and even if one can "advance an argument claiming opposite effects or no effects at all."  *Id.*

"[T]his close nexus requirement [] mean[s] little more than that President's explanation for how an Executive Order promotes efficiency and economy must be reasonable and rational."  *Chamber of Com. of U.S. v. Napolitano*, 648 F. Supp. 2d

---

are inconsistent with this Court's prior findings on this issue, ECF No. 58 at 15–17, and they are not binding on this Court.

726, 738 (D. Md. 2009) (one sentence explanation sufficient); *see also Chamber of Com. of U.S. v. Reich*, 74 F.3d 1322, 1333 (D.C. Cir. 1996) ("The President's authority to pursue 'efficient and economic' procurement . . . certainly reach[es] beyond any narrow concept of efficiency and economy in procurement.").  And indeed, the Procurement Act has been interpreted to allow the President to direct federal contracting as it relates to a variety of substantive issues.  *See, e.g.*, *City of Albuquerque v. U.S. Dep't of Interior*, 379 F.3d 901 (10th Cir. 2004) (urban renewal); *Chao*, 325 F.3d 360 (collective bargaining rights); *Am. Fed'n of Gov't Emps., AFL-CIO v. Carmen*, 669 F.2d 815 (D.C. Cir. 1981) (energy conservation during an oil crisis); *Kahn*, 618 F.2d at 790 (noting multiple Presidents "prominent[ly]" used FPASA to impose "a series of anti-discrimination requirements for Government contractors"); *Napolitano*, 648 F. Supp. 2d at 729 (assessing employee work eligibility through E-Verify).  The Procurement Act "emphasiz[es] the leadership role of the President in setting Government-wide procurement policy on matters common to all agencies" and expects "the President [to] play a direct and active part in supervising the Government's management functions."  *Kahn*, 618 F.2d at 788.

As this Court has already recognized, the Contractor Order "easily satisfies the nexus requirement" of the Procurement Act.  ECF No. 58 at 16.  The President explained in Section 1 of the Contractor Order:

> This order promotes economy and efficiency in Federal procurement by ensuring that the parties that contract with the Federal Government provide adequate COVID-19 safeguards to their workers performing on or in

connection with a Federal Government contract . . . .  These safeguards will decrease the spread of COVID-19, which will decrease worker absence, reduce labor costs, and improve the efficiency of contractors and subcontractors at sites where they are performing work for the Federal Government.

86 Fed. Reg. at 50,985.

The Contractor Order is concerned with protecting the federal government's financial and operational interests as a contracting party.  Ensuring that its contractors do not suffer major disruptions from COVID-19 accomplishes just that.  COVID-19 is an airborne disease that spreads quickly, so in order to ensure that contractors do not spread COVID-19 to one another, all contractors working in any given physical workspace must be vaccinated.  This is fully explained by the OMB Determination's approval of the Safer Federal Workforce Taskforce's COVID-19 safety protocols, which lays out that increased vaccinations will "decrease the spread of COVID-19, which will in turn decrease worker absence, save labor costs on net, and thereby improve efficiency in Federal contracting."  Determination of the Acting OMB Director Regarding the Revised Safer Federal Workforce Taskforce Guidance for Federal Contractors, 86 Fed. Reg. 63,418, 63,421–22 (Nov. 16, 2021).  To anyone who has lived through the COVID-19 pandemic and its resulting economic turmoil, the nexus between reducing the spread of COVID-19 and economic efficiency should be self-evident. While Plaintiffs may disagree with the President's policy or consider it unwise, the Executive Order's explanation is sufficient to show the required nexus between the policy and promoting economy and efficiency.

Plaintiffs' reliance on the Supreme Court's recent decision in *National Federation of Independent Business v. Occupational Safety and Health Administration (NFIB)*, 142 S. Ct. 661 (2022) (per curiam) is misplaced.  ECF No. 74 at ¶¶ 5–7.  The Supreme Court's statutory analysis in *NFIB* rested on principles of statutory construction that apply only where an administrative agency's action would bring about an enormous and transformative expansion of its regulatory authority—not where, as here, the President exercises well-established power to manage the federal government's proprietary interests.  In *NFIB*, the Supreme Court considered whether the Occupational Safety and Health Act ("OSH Act"), 29 U.S.C. § 651 *et seq.*, authorized the Occupational Safety and Health Administration ("OSHA") to issue an emergency temporary standard requiring "virtually all employers with at least 100 employees" to impose COVID-19 vaccination-or-testing obligations on their employees.  142 S. Ct. at 662, 665.  Based on its observation that OSHA's mandate applies to "84 million Americans" and represents a significant expansion of OSHA's regulatory authority, the Court relied on the proposition that Congress is expected "to speak clearly when authorizing an agency to exercise [such] powers of vast economic and political significance."  *Id.* at 665 (quoting *Ala. Ass'n of Realtors v. Dep't of Health and Hum. Servs.*, 141 S. Ct. 2485, 2489 (2021) (per curiam)).  The Court held that Congress had not "plainly authorized" OSHA's vaccination-or-test standard because the OSH Act permits OSHA to regulation only "*occupational* hazards," and COVID-19 is not a hazard unique to the workplace.  *Id.* at 665–66.

The "major questions" principles applied in *NFIB* are relevant only when an administrative action represents an "enormous and transformative expansion in [an agency's] *regulatory* authority."  *Utility Air Regul. Grp. v. EPA*, 573 U.S. 302, 324 (2014) (emphasis added); *accord NFIB*, 142 S. Ct. at 665 ("Permitting OSHA to regulate the hazards of daily life . . . would significantly expand OSHA's regulatory authority . . . ."); *see also, e.g.*, *Ala. Ass'n of Realtors*, 141 S. Ct. at 2489; *King v. Burwell*, 576 U.S. 473, 485–86 (2015); *Gonzales v. Oregon*, 546 U.S. 243, 267–68 (2006); *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 160 (2000).  In promulgating the Contractor Order, the President did not exercise "*regulatory* authority" of any kind.  Rather, the President exercised the federal government's *proprietary* authority, as the purchaser of goods and services from those with whom it contracts.  *See Perkins v. Lukens Steel Co.*, 310 U.S. 113, 127 (1940) ("Like private individuals and businesses, the Government enjoys the unrestricted power . . . to determine those with whom it will deal, and to fix the terms and conditions upon which it will make needed purchases.").  Unlike OSHA's vaccination-or-test standard, which directly regulated private employers pursuant to Congress' Commerce Clause authority, the Contractor Order imposes no generally applicable regulation on any industry, entity, or individual.  Instead, as an exercise of Congress' powers under distinct constitutional provisions, including the Spending Clause, the Contractor Order reflects the President's management decision to do business with only those entities

1   willing to perform work for the federal government under certain contractual

2   standards.

3       The Supreme Court's other recent COVID-19 vaccination decision in *Biden v.*

4   *Missouri*, 142 S. Ct. 647 (2022) (per curiam), provides this Court with relevant

5

6   instruction by analogy:  namely, that the President's "longstanding practice" of using

7   his authority under the Procurement Act to address a wide range of concerns related to

8

9   federal contractor operations is a strong indication that the Contractor Order is a

10  legitimate exercise of such authority.  *Cf. Missouri*, 142 S. Ct. at 652.  In *Missouri*, the

11

12  Supreme Court reviewed a Department of Health and Human Services ("HHS")

13  regulation requiring hospitals and other healthcare facilities that participate in

14  Medicare or Medicaid to ensure that their staff are either vaccinated against COVID-

15

16  19 or receive a religious or medical exception.  142 S. Ct. at 650.  Like this case,

17  *Missouri* involved a broad grant of statutory authority related to the expenditure of

18  federal funds.  *Compare id.* at 652 ("Congress has authorized the Secretary to impose

19

20  conditions on the receipt of Medicaid and Medicare funds that 'the Secretary finds

21  necessary in the interest of the health and safety of individuals who are furnished

22  services.'" (quoting 42 U.S.C. § 1395x(e)(9))), *with* 40 U.S.C. §§ 101, 121

23

24  (authorizing the President to "prescribe policies and directives that the President

25  considers necessary" to promote "an economical and efficient system" for federal

26  procurement).  Crucially, in determining the scope of HHS's authority, the Supreme

27

28  Court looked to the agency's "longstanding practice . . . in implementing the relevant

FEDERAL DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT - 19

statutory authorities." *Missouri*, 142 S. Ct. at 652. Based on HHS's historical practice of imposing "conditions that address the safe and effective provision of healthcare, not simply sound accounting," the Court rejected a narrow reading of the statute's broad language because it was inconsistent with this historical precedent. *Id.*

Here, the Executive Branch's longstanding practice of issuing executive orders regarding federal procurement is similarly instructive and underscores the validity of the Contractor Order. As the cases cited *supra* at p. 17 demonstrate, the Procurement Act has long been understood to grant the President broad authority and discretion to manage the federal procurement system, and the Contractor Order is a permissible exercise of that authority. Just as the Supreme Court concluded that the Executive Branch may make COVID-19 vaccination a "condition of participation" in Medicare and Medicaid, 142 S. Ct. at 654, this Court should hold that the President, like any other contractor, may make COVID-19 vaccination a condition of participation in federal contracting.

> D. The President is statutorily not subject to the Office of Federal Procurement Policy Act (Count 5).

Plaintiffs' claims for violation of federal procurement policy are unchanged from the initial complaint and still fail as a matter of law. Plaintiffs seek to hold the President liable for failing to comply with the notice and comment provisions of the Office of Federal Procurement Policy ("OFPP") Act. ECF No. 74 at ¶¶ 384–93 (citing 41 U.S.C. § 1707(a)(1)). Plaintiffs again identify no legal authority that allows

them to assert the OFPP Act itself as a privately enforceable cause of action.

Moreover, the OFPP Act's notice and comment provision only applies to "executive

agencies," which does not include the President or the White House in its statutory

definition. 41 U.S.C. § 133. Because the President is not bound by the OFPP Act's

notice and comment procedures, this claim should be dismissed.

> E. <u>Plaintiffs' constitutional structural arguments (Counts 6–9, 13) are not standalone causes of action and are insufficiently pled.</u>

Plaintiffs raise a series of constitutional structural arguments seeking to

invalidate the Executive Orders as generally violating principles of federalism and

separation of powers. These claims should be dismissed for several reasons.

First, Plaintiffs' abstract legal arguments are untethered to any specific cause of

action. Plaintiffs are certainly entitled to assert arguments about the constitutionality

of the Executive Orders, but in order to state a plausible claim for relief, they must

assert those arguments via an actual cause of action. These claims should be

dismissed for failure to state a claim upon which relief can be granted.

Second, Plaintiffs' arguments are insufficiently pled. Plaintiffs' pleading of

these claims is difficult to discern at best. While Plaintiffs have recited a series of

constitutional terms of art, their pleadings jumble multiple distinct constitutional

principles in such an incomprehensible way that none of their claims are plausible on

their face. *Twombly*, 550 U.S. at 570.

As an example, Count 13 of the Second Amended Complaint purports to raise a Commerce Clause challenge to the Executive Orders.  But the substance of Count 13 is devoted to arguments about federalism and the anticommandeering principle.  ECF No. 74 at ¶¶ 455–57.  Count 7 of the Second Amended Complaint purports to claim that the Executive Orders violate separation of powers and federalism principles, but the substance of Count 7 seems to challenge the constitutionality of the Procurement Act itself under Article I, Section 8 of the Constitution.  ECF No. 74 at ¶¶ 408–16. Count 8 of the Complaint purports to assert that the Executive Orders violate federalism principles by intruding on states' police powers, but it is unclear how this cause of action is different from the federalism claims that are also asserted in Count 7 and argued in support of Count 13.  *Compare* ECF No. 74 at ¶¶ 417–22 *with* ¶¶ 456–57.  While Plaintiffs have recited constitutional law buzzwords, their pleadings are substantively incomprehensible.  The Court should dismiss these constitutional structural arguments as insufficiently pled.

F.  Plaintiffs' APA claims (Counts 10–12) fail for lack of a proper defendant.

Plaintiffs raise three claims that the Federal Acquisition Regulatory ("FAR") Council's class deviation, the OMB Determination, and the Executive Orders themselves all violate the APA.  ECF No. 74 at ¶¶ 427–54.  Presumably Plaintiffs intended to assert all three APA claims against President Biden, as Secretary Granholm and Mr. Vance have no connection to the promulgation of the Executive

Orders, the FAR deviation, or the OMB determination. But the President cannot be sued under the APA. *Franklin v. Massachusetts*, 505 U.S. 788, 796 (1992). Because Plaintiffs' APA claims fail to name a proper defendant, they should be dismissed for failure to state a claim.

G. Plaintiffs fail to adequately plead their equal protection challenge (Count 2).

Plaintiffs assert that their equal protection rights are being violated on the basis of their status as having "natural immunity" against COVID-19. ECF No. 74 at ¶ 362. Again, aside from the basic problem that still only a handful of Plaintiffs have alleged their "natural immunity" status, a term that they also fail to define, Plaintiffs fail to articulate an equal protection claim. "Natural immunity" is not a suspect class, so Plaintiffs' equal protection claim is subject to rational basis review. *See Tandon v. Newsom*, 992 F.3d 916, 930 (9th Cir. 2021). And while Plaintiffs assert generally that they are not receiving equal protection under the law, they fail to plead with any specificity how they are being treated differently than other similarly situated individuals on the basis of their status. *See City of Cleburne, Tex. v. Cleburne Living Center*, 473 U.S. 432, 439 (1985) ("The Equal Protection Clause . . . is essentially a direction that all persons similarly situated should be treated alike.") Plaintiffs' equal protection claim should be dismissed for failure to state a claim.

H. <u>The vaccination mandates do not violate Plaintiffs' substantive due process rights (Count 3).</u>

Plaintiffs' substantive due process claim asserted in Count 3, and also argued in Count 2, remains foreclosed by longstanding precedent.  ECF No. 74 at ¶¶ 359, 364–68.  As the Supreme Court explained in addressing another vaccine mandate over 115 years ago, "the liberty secured by the Constitution of the United States to every person within its jurisdiction does not import an absolute right in each person to be, at all times and in all circumstances, wholly freed from restraint." *Jacobson v. Massachusetts*, 197 U.S. 11, 26 (1905).  The Court continued, "[r]eal liberty for all could not exist under the operation of a principle which recognizes the right of each individual person to use his own, whether in respect of his person or his property, regardless of the injury that may be done to others." *Id.*

Courts today continue to rely on *Jacobson* to find that vaccination requirements such as those at issue here do not burden any "fundamental right ingrained in the American legal tradition." *Klaassen v. Tr. of Ind. Univ.*, 7 F.4th 592, 593 (7th Cir. 2021).  As the cases cited in Federal Defendants' TRO opposition brief demonstrate, Plaintiffs do not have a fundamental liberty interest in avoiding vaccination, their claims should be evaluated under rational basis review, and numerous courts, including this Court, have recognized that stemming the spread of COVID-19 is a legitimate state interest.  *See* ECF No. 41 at 28–30.

Plaintiffs' citation to inapplicable privacy case law does not change this legal landscape.  ECF No. 74 at ¶ 366.  These "unadorned, the-defendant-unlawfully-

FEDERAL DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT - 24

1    harmed-me" allegations are insufficient to meet Plaintiffs' pleading burden. *Iqbal*,

2    556 U.S. at 678. The Court should dismiss Plaintiffs' substantive due process claims

3    for failure to state a claim.

4

5          I. <u>Plaintiffs' free exercise claim is unripe and insufficiently pled (Count 1).</u>

6          The Second Amended Complaint's free exercise claim contains the same flaws

7    as the first two complaints. To the extent Plaintiffs intended to assert a facial First

8    Amendment challenge to the Executive Orders, such claim would fail on its face

9    because the vaccination mandates each provide for exceptions "as required by law."

10   86 Fed. Reg. at 50,990; 86 Fed. Reg. at 50,985. And to the extent the Plaintiffs assert

11   an as-applied challenge to the vaccination mandate, their claims remain unripe and

12   insufficiently pled.

13

14         Plaintiffs purport to assert a claim under the Religious Freedom Restoration Act

15   ("RFRA"), but they fail to allege any specific facts that would allow this Court, and

16   Defendants, to evaluate their claims under RFRA's legal framework. ECF No. 74 at

17   ¶¶ 348–56. "To establish a prima facie RFRA claim, a plaintiff must present evidence

18   sufficient to allow a trier of fact rationally to find the existence of two elements. First,

19   the activities the plaintiff claims are burdened by the government action must be an

20   'exercise of religion.' Second, the government action must 'substantially burden' the

21   plaintiff's exercise of religion." *Navajo Nation v. U.S. Forest Serv.*, 535 F.3d 1058,

22   1068 (9th Cir. 2008) (en banc) (citations omitted). Even under the deferential Rule 12

23   standard, the Court is not required to accept the sincerity of Plaintiffs' asserted

religious objections absent *any* supporting factual allegations.  *See Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 717 n. 28 (2014) ("To qualify for RFRA's protection, an asserted belief must be 'sincere'; a [claimant's] pretextual assertion of a religious belief in order to obtain an exemption . . . would fail.").

This case involves 314 individual Plaintiffs.  Not one of them has pleaded any factual allegation to indicate what the nature of their asserted religious belief is, what activity they assert qualifies as an "exercise of religion," or how the Executive Orders create a "substantial burden," within the Ninth Circuit's definition of that term of art, on that exercise of religion.  *Navajo Nation*, 535 F.3d at 1068.  To proceed past the pleading stage, the plaintiff's factual allegations, accepted as true, must state a claim that is "plausible on its face."  *Twombly*, 550 U.S. at 570.  Having failed to allege sufficient factual support for their free exercise claims, the Court should dismiss this claim for failure to state a claim.

J.   Plaintiffs Should Not Be Granted Leave to Amend.

Plaintiffs' Second Amended Complaint should be dismissed with prejudice and without leave to amend.  The Federal Rules of Civil Procedure encourage leave to amend be "freely given," Fed. R. Civ. P. 15(a)(2), and "[d]ismissal without leave to amend is improper unless it is clear, upon de novo review, that the complaint could not be saved by any amendment."  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008) (citation omitted).  But this case fits the bill.

Plaintiffs have now had three opportunities to meet basic minimal pleading standards, and they have failed to do so on each occasion.  Defendants have consequently filed three motions to dismiss focused on the same fundamental procedural and jurisdictional flaws in this case.  Those deficiencies have not been meaningfully addressed in Plaintiffs' ongoing amendments.[7]  The result is a now-third attempt at a civil complaint which recycles the same grievances over the Executive Orders but fails to conform to the basic pleadings requirements to file a lawsuit in federal court.  The Court noted as early as the TRO stage that many Plaintiffs assert unripe claims, but Plaintiffs have failed upon repeated amendment to either plead sufficient facts to correct their standing issues or to trim the Plaintiffs who lack standing from the case.  ECF No. 58 at 10–14.  Plaintiffs continue to allege no facts to support their individual free exercise claims.  And while Plaintiffs seek to make abstract arguments about the legality of the Executive Orders, they have repeatedly failed to assert those arguments through cognizable causes of action or against proper

---

[7] As a notable example, Defendants twice moved to dismiss the state law claims being asserted against the federal actors, being sued in their official capacities, as barred by sovereign immunity.  Plaintiffs have eliminated those claims from the Second Amended Complaint, but not before stating that they would reassert those claims in state court, again in blatant disregard of the fundamental sovereign immunity issue.  ECF No. 71 at 10.

defendants.  To be sure, those causes of action do exist and have been properly pled by other plaintiffs raising similar challenges to these Executive Orders in other federal district courts.  But Plaintiffs' ongoing refusal to conform their pleadings to Article III's justiciability requirements and the Federal Rules of Civil Procedure, despite the Court's early identification of many of these foundational issues, demonstrates their Complaint cannot be saved by ongoing amendment.  Defendants should not be made to continue expending public resources in defense of these improper pleadings.  The Court should dismiss the Second Amended Complaint with prejudice.

## IV.    Conclusion

For the reasons set forth above, Defendants respectfully request that Plaintiff's claims be dismissed with prejudice either for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) or for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), and that Defendants be dismissed as parties to this suit.


DATED this 18th day of March 2022.

*Vanessa R. Waldref*
United States Attorney

*s/Molly M.S. Smith*
John T. Drake
Molly M.S. Smith
Assistant United States Attorneys
*Attorneys for Federal Defendants*

1

**CERTIFICATE OF SERVICE**

2

I hereby certify that on March 18, 2022, I caused to be delivered via the method

3

4

listed below the document to which this Certificate of Service is attached (plus any

5

exhibits and/or attachments) to the following:

6

7

8

9

10

11

12

13

14

15

| NAME & ADDRESS | Method of Delivery |
|---|---|
| Nathan J. Arnold<br>Arnold & Jacobowitz PLLC<br>2701 First Avenue, Suite 200<br>Seattle, WA 98121<br>nathan@CAJlawyers.com | ☒CM/ECF System<br>☐Electronic Mail<br>☐U.S. Mail<br>☐Other: _____ |
| Simon Peter Serrano<br>Silent Majority Foundation<br>5426 N. Rd. 68, Ste. D, Box 105<br>Pasco, WA 99301<br>pete@silentmajorityfoundation.org | ☒CM/ECF System<br>☐Electronic Mail<br>☐U.S. Mail<br>☐Other: _____ |

16

17

*s/Molly M.S. Smith*_____
Molly M.S. Smith

18

19

20

21

22

23

24

25

26

27

28